| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>v.<br><br>JOHNNYLEE PRESTON BURK,<br><br>                          Defendants. | Case No. 3:15-cr-00022-RRB-DMS<br><br>**RECOMMENDATION REGARDING GOVERNMENT'S OBJECTIONS (DOC. 166)** |

In the Initial Report and Recommendation, this Court recommended that Defendant Johnnylee Burk's Motion to Suppress be granted. (Doc. 160). The government filed numerous objections, (Doc. 166), and Burk responded, (Doc. 169).

Notably, the government did not object to the Court's findings that the act of driving Burk away from the scene of his initial detention was made without an investigative purpose or out of a concern for officer safety. Filed simultaneous with these recommendations is the Court's Final Report and Recommendation.

## I. The Government's Objections

### A. Objection 1: The Tracker Warrant Did Not Violate the Fourth Amendment.

The government reasserts its argument that the state GPS tracking warrant did not violate the Fourth Amendment. (Doc. 166 at 1). As the Court explained in section III(A) of its Final Report and Recommendation, it is unnecessary to reach this issue because the Court finds that it must recommend suppression even if the warrant was valid under the Fourth Amendment.

**B. Objection 2**: **The Alaska State Troopers' Reliance on the Warrant Was Proper.**

The government reasserts its argument that even if the GPS tracker warrant was invalid, Sgt. Nelson of the Alaska State Troopers acted in good faith in relying on a warrant issued by a neutral and detached magistrate. (Doc. 66 at 1-2). It is unnecessary to reach this issue, as the Court must recommend suppression even if the warrant was valid under the Fourth Amendment, or, in the alternative, law enforcement acted in good faith in executing an invalid warrant. *See* Section III(A) of the Final Report and Recommendation.

The Court reiterates its conclusion in section III(F)(3) of the Final Report and Recommendation: the warrant in this case did not authorize an arrest without probable cause to facilitate the replacement of the GPS tracking device following a *Terry* stop in an unrelated investigation. Accordingly, the government cannot rely on the officer's good-faith reliance on the warrant to justify the arrest of Burk that occurred when he was driven away from the scene of his initial detention without justification.

The Supreme Court and the Ninth Circuit have rejected a good-faith exception premised on an officer's mistake of law. *See, e.g., Taylor v. Alabama*, 457 U.S. 687, 693 (1982) (rejecting, without discussion, a good faith exception to the exclusionary rule where law enforcement conducted an investigatory arrest without probable cause); *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000)

(acknowledging that an officer's good-faith mistake of fact can form the basis of an exception to the exclusionary rule, while rejecting "a good-faith exception to the exclusionary rule for police who do not act in accordance with governing law.").

However, this should not be confused with the Supreme Court's rulings in *United States v. Leon* and *Davis v. United States*. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that the exclusionary rule is inapplicable where law enforcement obtained evidence in objectively reasonable, good-faith reliance on a warrant erroneously issued through the legal error of a neutral, detached magistrate. Similarly, the Supreme Court has extended the *Leon* good-faith exception to the exclusionary rule to instances where law enforcement reasonably relied on binding appellant precedent that was later overruled. *Davis v. United States*, 564 U.S. 229 (2011).

As noted, the evidence at issue here cannot be saved from suppression by claiming good-faith reliance upon the warrant pursuant to *Leon*. The warrant did not authorize the arrest without probable cause of Burk following a *Terry* stop in an unrelated investigation.

In addition, it is irrelevant to the resolution of this motion whether Sgt. Nelson, Trooper Cook and Officer Smylie believed in good faith that it was lawful to drive Burk away from the scene to facilitate the placement of the GPS device. Such detention was unlawful under the established Supreme Court precedent in *Florida v. Royer,* 460 U.S. 491 (1983) (plurality opinion) and *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015) (extension of traffic stop for eight minutes to allow for a

drug detection dog to arrive made stop an illegal detention absent a reasonable suspicion the car contained narcotics. Whether the officers made a mistake of law in good faith or bad faith is irrelevant to this analysis.[1]

### C. Objection 3: The Replacement of the GPS Tracker on Burk's Vehicle Was Proper

The government reasserts its argument that the placement of a second GPS tracking device on Burk's vehicle was proper. (Doc. 66 at 2). As the Court explained in section III(B) of its Final Report and Recommendation, it is unnecessary to reach this issue, because the Court finds it must recommend suppression even if the placement of a second GPS unit was proper.

### D. Objection 4: The Initial Detention of Burk Was Proper; the Court Erred in Concluding that the Initial Detention Transformed into an Illegal Arrest.

The government reasserts its argument that the initial detention was legal. (Doc. 166 at 2). As the Court explained in section III(C) of its Final Report and Recommendation, the Court assumes that the initial detention of Burk at the scene of Gregory and Reed's arrest was legal, but must nevertheless recommend suppression.

The government also objects to this Court's finding that the act of driving Burk away from the scene without an investigative purpose amounted to an unlawful arrest. (Doc. 166 at 2-3). The government points to Officer Smylie's

---

[1] As noted in the Final Report and Recommendation, this Court cannot find the good faith of the officers on this record due to the contradictory and evasive testimony from law enforcement officers. *See* footnote 18 of the Final Report and Recommendation.

testimony that he and the other Wasilla Police Department officers intended, but ultimately did not, conduct an investigation of Burk's involvement with Gregory and Reed. (Doc. 166 at 2-3). Observing that the act of driving Burk away from and back to the scene of his initial detention lasted approximately five minutes, the government argues that no illegal arrest occurred because the Wasilla Police Department's continued investigation, which did not actually occur, would have lasted longer. The government cites to no authority to support this argument.

This Court is unable to determine how long an investigation that never occurred would have taken. In any event, the reasonableness of a seizure "depends on what the police *in fact* do." *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015*)* (emphasis added) (citing *Knowles v. Iowa,* 525 U.S. 113, 115-16 (1998) (reversing the Iowa Supreme Court's determination that a search could be justified as a search incident to arrest where the defendant had not been placed under arrest prior to the search)). Even if courts were permitted to determine the reasonableness of police conduct according to alternative, hypothetical versions of events, as opposed to what actually occurred, the government's argument would still fail.

The law is clear that the length of a *Terry* stop is determined by the stop's mission and concerns of officer safety. *Rodriguez,* 135 S. Ct. at 1614. **A *Terry* stop may last no longer than is necessary to effectuate the purpose of the stop**. *United States v. Sharpe*, 470 U.S. 675, 684–85 (1985). While law enforcement is permitted to make inquiries unrelated to the stop's mission, these inquiries may not measurably extend the stop without transforming the stop into an illegal arrest.

*Rodriguez,* 135 S. Ct. at 1616. In *Rodriguez,* the Supreme Court squarely rejected the government's argument that law enforcement may prolong the duration of a stop for reasons unrelated to the stop's mission so long as officers are reasonably diligent and the overall duration of the stop remains reasonable.[2] *Id.*

This Court finds no merit to the government's objection, and reiterates that the reasonableness of a police encounter turns on events as they occurred and not on what might have been. *Id.* at 1616 ("The reasonableness of a seizure. . .depends on what the police in fact do.").

**E. Objection 5(a): The Court Improperly Relied On a "But For" Test.**

The government objects, arguing that this Court used a "but for" test to determine that the methamphetamine seized on January 29, 2015, was a fruit of the illegal arrest that occurred on January 28, 2015. (Doc. 166 at 3). As the government observes in the very same objection, "but for" causality is one of the *necessary* conditions for suppression under the exclusionary rule. (Doc. 166 at 3

---

[2] At the evidentiary hearing, Officer Smylie of the Wasilla Police Department testified that had the Troopers not arrived on scene to place a second GPS tracking device on Burk's vehicle, he would have continued Burk's detention in order to: (1) allow dispatch time to run a "drug history" check on the defendant; (2) allow himself time to look through the windows of Burk's car to search for contraband in plain sight; and (3) to allow time for a K-9 unit to arrive on scene to conduct a sniff search of Burk's car. *See* Section II(E) of the Final Report and Recommendation.

As noted, under *Rodriguez,* police may not extend a stop to bring a drug dog to the scene absent a reasonable suspicion that the suspect's vehicle contains narcotics. 135 S. Ct. at 1615-16. The government has not asserted, and this Court cannot find, that law enforcement reasonably suspected Burk's vehicle to contain narcotics on January 28, 2015.

The record is silent as to how long a drug history check would have taken at the time of Burk's detention. Officer Smylie testified that drug history checks take a few minutes, or, at times, "longer." (Tr. I at 50). Nor is it clear how Officer Smylie intended to use the drug history information in his investigation of Burk's involvement with Gregory and Reed. (*Id.*). It clear that it would have taken less than a minute to look through the window of Burk's vehicle to see if there was contraband in plain view.

(quoting *Hudson v. Michigan*, 547 U.S. 586, 592 (2006)); *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (rejecting "but for" as the sole test under the exclusionary rule and directing courts to assess whether, "'granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'").

A "but for" test is the first step in determining whether suppression is necessary. The second stop is to determine whether the taint of a Fourth Amendment violation is sufficiently attenuated from the seizure of evidence to purge the violation's taint. Accordingly it was not error for this Court to apply a "but for" test to determine whether, in the first instance, the methamphetamine in this case was a fruit of the illegal arrest. *Hudson*, 547 U.S. at 592 ("Our cases show that but-for causality is only a necessary, not a sufficient, condition for suppression.").

This Court did not solely apply a "but for" test to determine the applicability of the exclusionary rule, but also, as a second step, conducted an attenuation analysis utilizing the *Brown* factors in section III(F) of the Final Report and Recommendation. The Court finds no merit to the government's objection.

**F. Objection 5(b): The Court Erred In Finding That Attenuation Analysis under *Brown v. Illinois* Requires a Significant Intervening Circumstance.**

The word "significance" is defined as the "[q]uality of being important; importance; moment; weight; consequence; as a matter of *significance*." Webster's

New International Dictionary 2335 (2d ed. 1934) (emphasis in original). In turn, the word significant is defined as "[h]aving meaning." *Id.* The government objects to this Court's conclusion that the second factor in the attenuation analysis under *Brown v. Illinois*—the presence or absence of intervening circumstances—requires that the intervening circumstance be significant, i.e. have meaning or importance. The government urges that "[r]equiring a *significant* intervening circumstance asks too much." (Doc. 166 at 4) (emphasis original).

While this Court agrees that the second *Brown* factor is generally referred to as "the presence of intervening circumstances," the Supreme Court clearly held in *Brown* that the taint of an illegal arrest was not attenuated where "there was no **intervening event of significance**" and the defendant's "first statement was separated from his illegal arrest by less than two hours." *Brown v. Illinois*, 422 U.S. 590, 604 (1975); *see also* 6 Search & Seizure § 11.4(b) (5th ed.) (noting that the *Brown* court "cited these factors as being most relevant: . . .(ii) 'there was no intervening event of significance whatsoever'[. . .]").

In recognition of this, at least eight of the twelve circuit courts of appeals, including the Ninth, have explicitly recognized the second *Brown* factor as referring to *significant* intervening circumstances. *United States v. Littlebird*, 461 F. App'x 644, 645 (9th Cir. 2011) ("More importantly, significant intervening circumstances exist to sufficiently purge the taint of the illegal stop."); *United States v. Jenkins*, 938 F.2d 934, 941 (9th Cir. 1991) ("Thus, we find that the coercive environment had not been cured by the presence of significant intervening circumstances."); *Lawhorn*

*U.S. v. Burk*
3:15-cr-00022-RRB-DMS
Recommendation Regarding Objections                                                                 Page 8 of 11

New International Dictionary 2335 (2d ed. 1934) (emphasis in original). In turn, the word significant is defined as "[h]aving meaning." *Id.* The government objects to this Court's conclusion that the second factor in the attenuation analysis under *Brown v. Illinois*—the presence or absence of intervening circumstances—requires that the intervening circumstance be significant, i.e. have meaning or importance. The government urges that "[r]equiring a *significant* intervening circumstance asks too much." (Doc. 166 at 4) (emphasis original).

While this Court agrees that the second *Brown* factor is generally referred to as "the presence of intervening circumstances," the Supreme Court clearly held in *Brown* that the taint of an illegal arrest was not attenuated where "there was no **intervening event of significance**" and the defendant's "first statement was separated from his illegal arrest by less than two hours." *Brown v. Illinois*, 422 U.S. 590, 604 (1975); *see also* 6 Search & Seizure § 11.4(b) (5th ed.) (noting that the *Brown* court "cited these factors as being most relevant: . . .(ii) 'there was no intervening event of significance whatsoever'[. . .]").

In recognition of this, at least eight of the twelve circuit courts of appeals, including the Ninth, have explicitly recognized the second *Brown* factor as referring to *significant* intervening circumstances. *United States v. Littlebird*, 461 F. App'x 644, 645 (9th Cir. 2011) ("More importantly, significant intervening circumstances exist to sufficiently purge the taint of the illegal stop."); *United States v. Jenkins*, 938 F.2d 934, 941 (9th Cir. 1991) ("Thus, we find that the coercive environment had not been cured by the presence of significant intervening circumstances."); *Lawhorn*

*v. Allen*, 519 F.3d 1272, 1291 (11th Cir. 2008) ("A significant intervening circumstance is indicated where the defendant 'volunteered a desire' to talk to the law enforcement officials 'soon after a lawful arrest, after advice of rights, and while his detention was plainly legal.'"); *United States v. Torres-Castro*, 470 F.3d 992, 1001 (10th Cir. 2006) ("A *Miranda* warning itself may be a significant intervening circumstance that can break any factual nexus between an illegal search and subsequent incriminating statement*."); Mosby v. Senkowski*, 470 F.3d 515, 522 (2d Cir. 2006) ("In addition, there were significant intervening circumstances between the warrantless arrest and the confession . . ."); United States v. Reed, 349 F.3d 457, 464 (7th Cir. 2003) ("The district court found no significant intervening circumstances present in this case which would purge the taint of the allegedly illegal arrest."); *United States v. Cantu*, 230 F.3d 148, 159 (5th Cir. 2000) ("In *Brown* the court found no 'significant' intervening circumstance from the defendant's initial illegal arrest and his eventual confession"); *Brummett v. Collins*, 980 F.2d 1443 (5th Cir. 1992) ("There were also significant intervening circumstances."); *United States v. Scios*, 590 F.2d 956, 993 (D.C. Cir. 1978) (Wilkey, J., dissenting) ("More important than their absence, however, is the presence here of the other attenuating factors cited in *Ceccolini* and *Brown v. Illinois*: the lapse of a substantial period of time; the presence of significant intervening circumstances; the non-flagrant nature of the original search; and the degree of volition exercised by the witness."); *United States v. Tovar*, 687 F.2d 1210, 1215 (8th Cir. 1982) ("The removal hearing is a significant intervening circumstance not present in *Brown*.").

In another formulation of the standard, the Ninth Circuit has stated that intervening circumstances must be "sufficiently important" to purge the taint of an illegal search or arrest. *See, e.g.*, *United States v. Washington*, 387 F.3d 1060, 1073-74 (9th Cir. 2004) (emphasis added and citations omitted). This Court finds no merit to the government's objection.

### G. Objection 5(c): Law Enforcement Did Not Act Purposefully or Flagrantly

Without making further argument, the government cites to section (V)(a)(iii) of its response in opposition to Burk's motion to suppress, (Doc. 115 at 24-27), reasserting its argument that Sgt. Nelson's "coordination with Wasilla Police officers" to place the second GPS unit was not flagrant misconduct. (Doc. 166 at 4 (citing Doc. 115 at 24-27)).

In section III(F)(3) of the Initial Report and Recommendation, the Court found that there was a purposeful and flagrant violation of Burk's Fourth Amendment rights by the Wasilla Police Department and the Alaska State Troopers. There is no indication in the record that the officers acted non-purposefully, and the government has proffered none. *See Washington*, 387 F.3d at 1075, n.17 ("In reciting the third attenuation factor, courts usually choose a conjunctive phrasing ('purpose and flagrancy'), but then find in favor of taint if there is evidence of either purposeful extraction of evidence or flagrant illegality."); *see also Taylor*, 457 U.S. at 693 (rejecting the argument that police conduct was neither purposeful nor flagrant where the police had arrested an individual without probable cause on the basis of an uncorroborated informant's tip).

Further, Officer Smylie's act of driving Burk away from the scene did not further the Wasilla Police Department's investigation of Burk's involvement with Gregory and Reed—the basis for their detention of Burk—or in any way ensure officer safety. The illegality was committed in a flagrant and improper attempt to facilitate the placement of the second GPS device so as to gather further evidence. *Cf. Brown v. Illinois*, 422 U.S. at 605. In *Brown*, the Court found flagrant and purposeful police misconduct where "[t]he impropriety of the arrest was obvious; awareness of that fact was virtually conceded by the two detectives when they repeatedly acknowledged, in their testimony, that the purpose of their action was 'for investigation' or for 'questioning.'" *Id*. Here, the government has conceded that there was no investigative purpose for removing Burk to the Creekside Plaza, (Tr. III at 190), other than to replace the GPS device in an attempt to gather further evidence against Burk. Nor has the government objected to the Court's finding that there were no concerns of officer safety justifying Burk's removal.

The Court finds the government's objection meritless.

## II.   Conclusion

For the foregoing reasons, the Court recommends that the District Court find the objections to be without merit and GRANT the defendant's Supplemental Motion to Suppress.

DATED this 17th day of March, 2016 at Anchorage, Alaska.

*S/Deborah M. Smith*
CHIEF U.S. MAGISTRATE JUDGE
